Sterrett, J.,
The two subjects of complaint in this case are: 1st. In charging the jury, inter alia, as follows: “ If, however, you find that, at the time of the accident, the plaintiff did not know of the alleged custom of giving notice of the blasts, and that he had no notice, either actual or constructive, of the particular blast in question, then he will be entitled to your verdict for such damages as will compensate him for the injury he has sustained.” 2d. In refusing to charge, as requested, that “the verdict, under all the evidence, must be for the defendants.”
It appears from the testimony that, in operating the slate quarries, blasts of different kinds and degrees of intensity, and consequent danger, are required. Those in general use are known to slate-men as “scallop blasts,” attended with little or no danger, except to those in the immediate vicinity of the explosion. The only warning usually given is by calling “ fire,” so as to attract the attention of employees and others at the- bottom of the quarry. Sometimes it is necessary to fire what is known as a “ back hole ” blast, in doing which stones, etc., are liable to fly up and out of the quarry and land on the bank, “ because [as the witnesses say] there is more ramming ” in the preparation of such blasts. It is, therefore, necessary that notice of- a more emphatic and effective character be given, so as to attract the attention of the “ landers,” and, through them, those who - may be near and within the sphere of danger. There is also another kind of blast, rarely used, known as the “crack” or “sand blast.” This is prepared by partially filling an opening or crevice in the rock with powder, laying a fuse and filling •in with sand and slate rubbish. If a heavy charge of powder is used, such a blast will send pieces of rock and stone to a great height and distance. Plaintiff below testified that, before firing such a blast, notice was always given by sending a man around. He says: “ They sent a man around and gave warning.” Another witness, in answer to a question put by the court, said: “ They would give an alarm, some way or other, so they would be satisfied every person had warning.” Peter Eobinson, another witness, testified he did “ not know if it is customary to give warning to the men on the bank -of such unusual blast or not. . . . The men on the landing, as a rule, when they see it is a ‘back hole,’ or *381 a blast likely to fly, generally hallo £ back hole,’ and they get notice on the bank of tener from the men on the landing than any other way.” John Cony testified: “It is customary to call up to the £ landers,’ and they would pass the word along the bank.” Others testified substantially to the same effect, but there was evidently a conflict of testimony as to what was the customai’y mode of warning when unusually dangerous blasts were fired. The weight of the testimony, however, appears to be that it was such special warning as would bring home notice of the danger to all within its sphere. Any other custom than that would be unreasonable; and would be more honored in the breach than the observance.
The evidence also tended to show that the blast by which plaintiff below was injured was a “ crack ” or “ sand blast,” prepared by putting about thirty-five pounds of powder in a large crack or opening in a rock, weighing 60 to 75 tons, lying near the bottom of plaintiff in error’s quarry. Sand and loose slate rubbish were rammed in on top; and, in that condition, it was fired, as the jury might well find, and doubtless did find, without proper warning to those who were exposed to the danger. The result of the blast appears to have been a disappointment to plaintiffs in error themselves ; but, there appears to be no good reason why it should have been. One of them, Mr. Jackson, testified: “We expected it would throw the burden south, but it didn’t; it blew out this six inches of seam and carried it right over the bank, which is not natural for it to do. . . . The stones flew out like ball out of a cannon; some fell on the tracks, near the Bangor and Portland depot, fifteen hundred feet away, and no other blasting ever threw stones as near the depot as that.” According to the evidence, the blast was one of the most dangerous kind. Considering the weight of the charge, 35 lbs. of powder, and the manner in which it was prepared, the result was not surprising.
' It was clearly the duty of defendants below to give proper and timely warning, not only to their own-employees, but also to the plaintiff and all others at work within the sphere of the danger. Anything short of that would be a plain violation of the principle Bio utere tuo ut alienvm non, laedas. Whether such warning was given or not, was, under all the evidence, a question of fact for the jury; and it was submitted to them under instructions that were certainly not unduly prejudicial to defendants below. It must be borne in mind that what was said by the learned judge, as to the alleged custom of giving notice of firing blasts, and whether plaintiff below had either actual or constructive notice or not, had reference to the dangerous class of blasts, or to the particular blast by which he was injured, rather than to the comparatively harmless class, known as “ scallop blasts.”
The entire charge, including the excerpt recited in the first specification of error, was quite as favorable to defendants below as they had any just reason to expect.
It follows that neither of the assignments of error is sustained.
Judgment affirmed.